

**SIGNED this 23 day of October, 2020.**

John T. Laney, III
**United States Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### VALDOSTA DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PATRICIA BENTON LEE | ) | Chapter 11 Proceeding |
| | ) | |
| Debtor, | ) | Case Number: 19-71337- JTL |
| _____ | ) | _____ |
| | ) | |
| U.S. NATIONAL BANK ASSOCIATION, | ) | |
| NOT IN ITS INDIVIDUAL CAPACITY | ) | |
| BUT SOLELY AS TRUSTEE FOR | ) | |
| RMAC TRUST, SERIES 2016-CTT | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICIA BENTON LEE | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION ON MOVANT'S
## MOTION FOR RELIEF FROM THE STAY

The above styled contested matter came before the Court on Movant's motion for relief

from the stay filed August 18, 2020. (Mov. Mot. for Relief from Stay Doc. 50). In this motion,

Movant, U.S. National Bank Association, not in its individual capacity but solely as trustee for

RMAC Trust, Series 2016-CT, requests relief from the stay under 11 U.S.C § 362(d). Movant

argues that the property which secures its interest is subject to 11 U.S.C § 1123(b)(5) and a

proposed plan that modifies its interest could not be confirmed.

For the reasons stated below, this Court concludes that Respondent's mortgage is subject

to the anti-modification provision of § 1123(b)(5) and Respondent does not have the reasonable

prospect of reorganization. Accordingly, Movant's motion for relief from the stay will be

granted.

## I.      PROCEDURAL POSTURE AND FACTS PLED

Movant comes before this Court for a motion for relief from the stay due to default in

payments of a mortgaged property located at 105 Albert Ln, Ochlocknee, GA 31733. In

September 2007, Respondent mortgaged the property with Quicken Loans, Inc. for $140,000.

Respondent states the property includes forty-three acres, which Respondent state roughly two

and a half surround a house in which Respondent lives. The rest has been leased and farmed by a

third-party commercial farmer. Over the duration of the mortgage, Respondent states that the

mortgage had been sold without notice, which led to Respondent's confusion of who owned the

mortgage.

At one point, in the late 2000s, an agent of a mortgage company that owned the mortgage

at the time informed Respondent that she would be eligible for Housing Action Resource Trust

("HART") federal refinancing as part of the 2008 economic recovery package, but in order to be

eligible, she must be in default on her mortgage payments. Accordingly, Respondent

intentionally defaulted on her mortgage in reliance on that information. The mortgage company

2

subsequently accelerated her mortgage according to the terms of the mortgage signed in

September 2007.

Respondent filed for chapter 11 bankruptcy on November 1, 2019. Movant submitted a

claim in Respondent's chapter 11 case for approximately $253,070.25 from Respondent's

mortgage, including $139,195.75 of unpaid principal and accrued interest of $82,228.15. Mov.

Mot. for Relief from Stay Doc. 50 at 3. On August 18, 2020, Movant filed a motion for relief

from the stay pursuant to 11 U.S.C § 362(d). *Id* at 2. On September 14, 2020, Respondent

submitted a plan for confirmation which modifies the mortgage on her property. Res. Chapter 11

Plan of Reorganization Doc. 52 at 5. During a hearing on the motion for relief from the stay, the

Court took the matter under advisement on September 16, 2020.

## II.    DISCUSSION

Movant requests relief from the automatic stay under § 362(d) claiming it does not have

adequate protection in its interest in Respondent's property, the debtor does not have equity in

the property, and the property is not necessary for an effective reorganization. 11 U.S.C. §

362(d)(1, 2). In claiming the Respondent lacks equity in the property and that the property is not

effective for reorganization, Movant relies on the anti-modification provision § 1123(b)(5).

Respondent purposed a plan which modifies Movant's interest. A chapter 11 plan cannot

be confirmed unless it conforms with the United States Bankruptcy Code ("Code") requirements.

11 U.S.C § 1129(a)(1). Those requirements include § 1123(b)(5) which states a plan may

> modify the rights of holders of secured claims, other than a claim secured only by a
> security interest in real property that is the debtor's principal residence, or of holders of
> unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1123(b)(5).  Despite Respondent's contention that the leased property attached to her

residence exempts her mortgage from § 1123(b)(5), the security interest the Movant retained is

secured by a property which contains Respondent's principal residence. The plain language of §

3

1123(b)(5) is clear and applies to Respondent's mortgage. Because §1123(b)(5) applies to

Movant's interest, Respondent's plan cannot be confirmed and there is no reasonable prospect of

reorganization. Thus, Movant's motion should be granted.

When determining whether the Respondent's mortgage was subject to the anti-

modification provision, this Court addressed the application of the anti-modification provision of

§ 1123(b)(5). In interpreting § 1123(b)(5), three schools of thought have emerged: the *In re*

*Wages*, 479 B.R. 575, 583 (Bankr. D. Idaho 2012), aff'd, 508 B.R. 161 (B.A.P. 9th Cir. 2014)

approach of traditional statutory interpretation, the *In re Scarborough*, 461 F.3d 406, 408 (3d

Cir. 2006) approach to look to the terms of the mortgage, or the *In re Brunson*, 201 B.R. 351,

353 (Bankr. W.D.N.Y. 1996) approach of a case-by-base analysis. While the Court believes that

the first is the proper approach, Movant's argument would be successful under the analysis of

any of the three approaches.

In analyzing the anti-modification provision in § 1123(b)(5), this Court looks to the same

question answered by the Court in *In re Wages,* 479 B.R. 575. The *Wages* court first used the

plain language of the statute to determine whether property other than the structure of the

debtor's principal residence would disqualify it from the anti-modification provision in §

1123(b)(5). *Id* at 579. When engaging in statutory interpretation, the Court looks to "the

language itself, the specific context in which that language is used, and the broader context of the

statute as a whole." *Smith v. BellSouth Telecommunications, Inc.*, 273 F.3d 1303, 1307 (11th Cir.

2001) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Where the statute is clear

and unambiguous, the Court's analysis ends there. *Hughes Aircraft Co. v. Jacobson*, 525 U.S.

432, 438 (1999).

The *Wages* Court found a claim that was subject to § 1123(b)(5) must meet the requirements explicitly stated in the statute: 1) the security interest must be in real property; 2) that real property must be the only security for the claim; and 3) the property must be the debtor's principal residence. *See In re Wages*, 479 B.R. at 579 (citing *In re Macaluso*, 254 B.R. 799, 800 (Bankr. W.D.N.Y. 2000)).  This Court agrees. In this case, the first two requirements are undisputed. Therefore, whether the anti-modification provision applies to Movant's claim depends on the Court's interpretation of the scope of the debtor's principal residence in § 1123(b)(5).

Respondent argues that the Court should consider her property in two sections: the residential section where she lives and the acres of land she leases. Therefore, Respondent believes the property is not secured by her principal residence alone and would not be subject to the anti-modification provisions. However, the Court finds the statutes use of "the debtor's principal residence" in § 1123(b)(5) unambiguous and Respondent's interpretation unpersuasive. In the phrase "other than a claim secured only by a security interest in real property that is the debtor's principal residence", the word "only" modifies the word "secured." 11 U.S.C § 1123(b)(5). The use of word "only" requires security interest be secured solely by real property that is the debtor's principal residence, not that the debtor must only or exclusively use the real property as her principal residence. *In re Macaluso*, 254 B.R. at 800 (Bankr. W.D.N.Y. 2000) ("the statute does not limit its application to property that is used only as a principal residence but refers generally to any parcel of real property that the debtor uses for that purpose.") Thus, because Respondent uses the property as her principal residence, § 1123(b)(5) applies. Respondent's other uses of the property are irrelevant.

Furthermore, even if the Court reads "only" as addressing the exclusive use of the property, the Respondent would still be barred from bifurcating the structuring of her residence and the property that surrounds it. The Code defines debtor's principal residence as "a residential structure if used as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to real property[.]" 11 U.S.C § 101(13)(A). Incidental property is defined as "property commonly conveyed with a principal residence in the area where the real property is located" 11 U.S.C. § 101 (27)(B)(A). The property that surrounds a debtor's residence is real property attached to the residence and is located at the same address as her principal residence. According to Respondent's son's testimony, the house and the forty-three acres were conveyed to her together, making the attached forty-three acres all incidental property to her residence. Debtor's principal residence includes incidental property and bifurcating Respondent's property would directly contradict the Code's definitions. Therefore, the fact that the leased property is incidental to the Respondent's home unites them under the plain language of the statute and subjects the entirety of the property to § 1123(b)(5).

Finally, the language of the statute does not qualify how the property is used other its use as the debtor's principal residence. The plain language of the statute says only that the property must be used as the debtor's principal residence; it does not include any language that would indicate that use must be exclusive. As the *Wages* Court states:

> [The anti-modification provision] does not protect from modification "claim[s] secured only by a security interest in real property that is *exclusively* the debtor's principal residence," or "claim[s] secured only by a security interest in real property that is the debtor's principal residence, *unless the debtor also uses the property for significant commercial purposes.*" Indeed, there is nothing in the Code indicating that, once a commercial use of a property becomes sufficiently "significant," that property ceases being the debtor's principal residence.

6

*In re Wages*, 479 B.R. at 581. The plain language of the statute is unambiguous; if the property is used as the debtor's principal residence, the anti-modification provision of § 1123(b)(5) applies.

Movants also address an alternative interpretation of the anti-modification provision from *In re Scarborough*, 461 F.3d 406 in support of its position. While the Court finds that statute is plain and unambiguous, some courts that have found otherwise have relied on this approach. *See e.g. In re Merritt*, 555 B.R. 471, 478 (E.D. Pa. 2016), aff'd, 702 F. App'x 90 (3d Cir. 2017); *In re Mobley*, 2011 WL 5833976, at *1 (Bankr. N.D. Ill. Nov. 17, 2011). The Court in *Scarborough* found that whether the property would be subject to the chapter 13 provision analogous to 1123(b)(5)[1], 1322(b)(2), was dependent on the mortgage provisions itself. *In re Scarborough*, 461 F.3d at 412. In *Scarborough*, the Court found that the provisions of the mortgage were dispositive in determining whether the anti-modification provision applies. *Id*. In that case, the terms of the mortgage, which included the assignment of rents to the mortgage company, were clear that the creditor knew a portion of the property was rented, giving notice to the creditor that the mortgage was not subject to the anti-modification provisions of § 1322(b)(2). *Id. See also In re Adebanjo*, 165 B.R. 98, 104 (Bankr. D. Conn. 1994) (holding the explicit inclusion of two rental units separate from the debtor's principal residence in the mortgage exempted the mortgage from § 1322(b)(2)).

In this case, there is no evidence in the mortgage that Movant would have known of other uses for the property other than the principal residence. The legal description of the property attached as Exhibit A to the mortgage signed by Respondent includes the entirety of the land

---

[1] The anti-modification language in 1322 exactly mirrors the anti-modification language in 1123(b)(5). Congress, in adopting 1123(b)(5), stated, "[t]his amendment conforms the treatment of residential mortgages in chapter 11 to that in chapter 13, preventing the modification of the rights of a holder of a claim secured only by a security interest in the debtor's principal residence" 140 Cong. Rec. H10752-01, H10767, 1994 WL 545773. Therefore, the Court is persuaded by courts' analyses of 1322(b)(2) in interpreting 1123(b)(5).

recorded as "Lot 65 of the 13th land district of Thomas County, Georgia." Mov. Mot. for Relief

from Stay Doc. 50 at 25. The legal description of the land makes no attempt to sever the

residence of the Respondent from the area she leased for commercial benefit. There are no other

provisions in the mortgage that identify the property as partially commercial or anything other

than residential property. Under the *Scarborough* approach, Movant's claim would be subject to

the anti-modification provisions under 1123(b)(5).

Finally, some courts have used a case-by-case analysis to determine whether a mortgage

is modifiable under § 1123(b)(5). *See In re Bulson*, 327 B.R. 830. The case-by-case analysis is

the least persuasive to the Court. First, unlike this Court, courts that have adopted this approach

do not first determine whether the plain language of the statute is ambiguous. *In re Wages*, 479

B.R. at 582 (citing *In re Kimbell*, 247 B.R. 35, 37–38 (Bankr. W.D.N.Y. 2000); *In re Maddaloni*,

225 B.R. 277, 279-80 (D. Conn. 1998)). Second, the case-by-case analysis requires that the

bankruptcy court consistently rule on transactions that could lead to contradictory results based

on the factors used in the instant analysis. These conflicting opinions could lead to unfairness to

debtors and creditors and could lead to uncertainty in for mortgage lenders. *See In re Bulson*, 327

B.R. 830, 842 (Bankr. W.D. Mich. 2005) ("the home mortgage lending market as a whole pays a

price for this result because of the considerable uncertainty such an approach lends to the

underwriting decision when home loans are made."); *In re Scarborough*, 461 F.3d at 414 ("the

multi-factor test introduces uncertainty and unpredictability to residential mortgage transactions

because it requires courts to engage in a subjective, hindsight analysis as to the intent of the

parties.") And, while the language of the statute as written may lead to harsh results, it is within

Congress's power, not the various courts' powers to rewrite to Code to avoid these results. See *In*

8

*re Wages*, 479 B.R. at 583 (citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 528, 124 S. Ct. 1023, 1026,

157 L. Ed. 2d 1024 (2004)).

However, were the Court willing to accept the case-by-case approach, Movant's

argument would still be successful. Courts that have been persuaded by the case-by-case

approach have considered the following factors:

> whether the Debtor (to the lender's knowledge) owned other income producing properties
> or other properties in which she could choose to reside; whether she had a principal
> occupation other than as landlord, and the extent to which rental income or other business
> income produced from the real estate contributed to her income; whether her total income
> was particularly high or particularly low; whether the mortgage was handled through the
> commercial loan department or the residential mortgage loan department of the lender;
> whether the interest rates applied to the mortgage were home loan rates or commercial
> loan rates; the demographics of the market (e.g. are "doubles" a much more affordable
> "starter home" than a single, in that locale); and the extent to which, and purpose for
> which, potential business uses of the land (such as farming) were considered by the
> lender.

*In re Brunson*, 201 B.R. at 353. According to her testimony, Ms. Lee works outside of the house

roughly thirty hours per week. The mortgage document includes a 6.375% interest rate paid to

the order of Countrywide Home Loans, Inc. In September 2007, the average residential mortgage

rate was approximately 6.38% while the average commercial mortgage rate for that quarter was

approximately 6.99%. *30-Year Fixed-Rate Mortgages Since 1971*, FREDDIEMAC,

http://www.freddiemac.com/pmms/pmms30.html (last visited Oct. 15, 2020); *Weighted-Average*

*Effective Loan Rate for All Commercial and Industry Loans, All Commercial Banks*

*(DISCONTINUED),* FEDERAL RESERVE ECONOMIC DATA,

https://fred.stlouisfed.org/series/EEANQ (last visited Oct. 15, 2020). The debt was to be paid to

the home loan department of Countrywide, not a commercial lender. As discussed above, there is

no evidence in the mortgage document the lender was aware of Respondent's intended

commercial use of the property. Given the weight of the evidence against the Respondent, even

an analysis of a few factors suggested by the case-by-case analysis does not support modification of her residential mortgage.

Under any of the three approaches, Respondent's mortgage is subject to the anti-modification provision in § 1123(b)(5). Therefore, the Respondent's chapter 11 plan which proposes modification of Movant's claim cannot be confirmed. Accordingly, this Court grants Movant's motion for relief from the stay.[2]

---

[2] Because this Court grants relief under the anti-modification provision, the Court declines to reach Movant's alternative argument pursuant to § 362(d)(2).